**UNITED STATES of America, Appellant,**

v.

**Joseph E. TODARO, Defendant-Appellee.**

**No. 1364, Docket 84–1086.**

United States Court of Appeals, Second Circuit.

Argued June 13, 1984.

Decided Sept. 11, 1984.

**6**

George L. Hastings, Jr., Atty., Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paul, Robert E. Lindsay, Attys., Tax Div., Dept. of Justice, Washington, D.C., Salvatore R. Martoche, U.S. Atty., Buffalo, N.Y., on brief), for appellant.

Joseph M. La Tona, Buffalo, N.Y. (Condon, La Tona & Klingensmith, Buffalo, N.Y., on brief), for defendant-appellee.

Charles F. Crimi, Sr., David Rothenberg, Lawrence J. Andolina, Criminal Defense League, Inc., Rochester, N.Y., submitted a brief for amicus curiae Criminal Defense League.

Mark J. Mahoney, Diebold, Bermingham, Gorman, Brown & Cook, Buffalo, N.Y., Ephraim Margolin, San Francisco, Cal., Nat. Ass'n of Criminal Defense Lawyers, Washington, D.C., submitted a brief for amicus curiae Nat. Ass'n of Criminal Defense Lawyers.

Before FRIENDLY, VAN GRAAFEILAND, and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This is an appeal by the Government, pursuant to 18 U.S.C. § 3731 (1982), from the February 7, 1984, order of the District Court for the Western District of New York (John T. Elfvin, Judge) precluding the introduction of certain evidence at trial unless the Government confers use immunity on two potential defense witnesses. Because we conclude that defense witness immunity, if ever available, was precluded by the standards set forth in *United States v. Turkish,* 623 F.2d 769 (2d Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981), we reverse.

### Facts

Defendant-appellee Joseph E. Todaro, Sr. was charged in an indictment with three counts of willfully attempting to evade federal income tax liabilities, in violation of 26 U.S.C. § 7201 (1982), and four counts of willfully subscribing false tax returns, in

violation of 26 U.S.C. § 7206(1) (1982). With respect to the tax evasion counts, the Government informed the District Court and the defendant that it intended to demonstrate the defendant's unreported taxable income by using the "net worth" method of proof. *See Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

Prior to the filing of the indictment, Todaro advised the Government of three possible sources of non-taxable funds. Todaro requested that the grand jury investigate loans allegedly made to Todaro by John Grieco, John Ryding, and Peter Marino in the respective amounts of $50,000, $30,000, and $10,000. After investigating these leads, the Government concluded that Marino had probably made a $10,000 loan to Todaro and accordingly credited Todaro's "net worth" calculation with the amount of the loan. However, the Government's investigation unearthed no evidence corroborative of the Grieco and Ryding loans. In response to a Government request for reciprocal discovery, Fed.R.Crim.P. 16(b)(1), Todaro indicated that he had no documentary evidence substantiating the existence of the loans. When Ryding and Grieco were called to testify before the grand jury investigating Todaro, each invoked his Fifth Amendment privilege against self-incrimination and declined to answer questions regarding the loans.

On August 23, 1983, after the filing of the indictment, Todaro moved for an order "directing" the United States to obtain use immunity for Grieco and Ryding. In an accompanying affidavit, defense counsel noted that the Government had already conferred use immunity upon a number of grand jury witnesses. Without specifying the substance of Grieco and Ryding's anticipated trial testimony or the unavailability of the crux of that testimony from other sources, defense counsel simply stated that the two defense "leads" would account for "the non-taxable receipt of approximately $80,000." Defense counsel also stated that "[a]bsent an immunity grant, it appears that testimony from these individuals cannot be obtained by the defense." Relying

on *Holland v. United States, supra,* defense counsel contended that the Government's duty to investigate defense leads as to the source and amount of non-taxable income encompasses the duty to confer use immunity "whenever that investigative technique is necessary to exhaust a 'lead.'" Defense counsel advanced two reasons for judicially compelled defense witness immunity. First, the "prosecution has engaged in selective use of immunity to gain a tactical advantage." Second, this selective practice amounts to a deliberate refusal to pursue defense leads as required by *Holland v. United States, supra.* Counsel concluded that Todaro *"may be* unfairly deprived of material and exculpatory evidence" (emphasis added).

The Government opposed the request primarily on the ground that this Circuit has "uniformly rejected" requests for defense witness immunity. It also noted that Todaro failed to supply *any* evidence indicating the existence of the loans or to make any proffer that the witnesses would testify if immunized and what their testimony would be. Further, the Government emphasized the absence of an affidavit of Todaro indicating the particulars surrounding the loans. Most notably, the Government submitted to the District Court, *in camera,* an affidavit of the prosecutor indicating the extent of the then existing evidence of possible criminal activity by each of the prospective defense witnesses and representing that any grant of immunity to either witness might impede future prosecutions.

On February 7, 1984, without making any factual findings, the District Court summarily ordered that, because there existed "conflicting factors of fairness" and "matters of third persons' privacy and confidentiality,"

> it shall be presumed for purposes of this trial that each of Greico [*sic* ] and Ryding and Marino was financially able at all pertinent times to have made a substantial loan or loans to Todaro and that the government may not adduce any evidence showing or tending to show that

Greico [*sic*] or Ryding or Marino was at any pertinent time financially unable to have made a substantial loan or loans to Todaro unless Greico [*sic*] or Ryding or Marino shall respectively have been accorded use immunity as to testimony on trial concerning such ability or the making *vel non* of such loan or loans to Todaro....

At the Government's request, the District Court held a hearing to clarify the effect of its order. In response to the Government's representation that Marino had freely testified before the grand jury, had never indicated an intent to invoke his Fifth Amendment privilege, and that Todaro never requested immunity for Marino, the District Court withdrew the order with respect to Marino. However, in response to the Government's asserted intent to introduce at trial evidence that it had investigated the alleged Greico and Ryding loans and was unable to find evidence substantiating their existence, the District Court stated:

> Now, that carries with it, of course, an implication that there was nothing [*i.e.*, no loans], which is why the Government is going to put it in. If it is put in merely to show that the Government has carried out the burden imposed upon it by Holland versus United States, namely to follow up every lead such as that given to the Government by the defendant, that's one thing. And if it is limited to that purpose and constrained to that use by the jury, it is probably all right. If there is going to be some attempt to have the jury infer from that that there was not the loan, then you are into the area covered by my Order.

When asked whether the Government could present proof that, although Greico had ample financial means, his funds were tied up so that he lacked the cash flow to finance the loan in question, Judge Elfvin further clarified his order by agreeing with the prosecutor's interpretation that it required the Government "to abstain from the evidence with respect to Mr. Greico entirely." Both sides understand this statement to apply equally to Ryding. The Court's rationale appears to have been that, since Greico and Ryding's testimony was then equally unavailable to both sides, fairness considerations preclude the Government from establishing, in an inferential fashion, the non-existence of the loans, when it had the statutory authority to resolve the uncertainty by extending use immunity to the witnesses. We think the Government fairly summarizes the effect of the District Court's order: "absent a grant of immunity, [the Court] will not permit the Government at trial to introduce any evidence for the proposition that the alleged loans did not occur, nor ask the jury to infer from any evidence that the loans did not occur." Brief for Appellant at 6. From this ruling, the Government appeals.[1]

### Discussion

In *United States v. Turkish, supra,* this Court considered both substantive and procedural aspects of a defendant's request to have use immunity conferred upon defense witnesses who invoke their privilege against self-incrimination.[2] We first noted that this Circuit had "uniformly rejected" requests for defense witness immunity.[3]

---

**1.** This Court has jurisdiction, pursuant to 18 U.S.C. § 3731, over this appeal from what amounts to a conditional order excluding evidence. *See United States v. Horwitz,* 622 F.2d 1101, 1104–05 (2d Cir.1980), *cert. denied,* 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 799 (1981).

**2.** Todaro suggests that the principles set forth in *Turkish* are not applicable to an order that merely conditions the admission of evidence and argument to the jury on the grant of use immunity to potential defense witnesses. We have previously ruled, however, that the same reasons that weigh against requiring a grant of

immunity also apply when the grant is a condition of admitting evidence. *See United States v. Horwitz, supra,* 622 F.2d at 1105.

**3.** In the wake of *Turkish,* this Court has regularly upheld district court denials of requests for defense witness immunity, *United States v. Calvente,* 722 F.2d 1019, 1025 (2d Cir.1983); *United States v. Burns,* 684 F.2d 1066, 1077–78 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983), and has remanded for reconsideration in light of *Turkish* a district court order suppressing testimony of a government-immunized witness unless use immunity

After rejecting the compulsory process clause of the Sixth Amendment as a constitutional basis for defense witness immunity, we explored the possibility that such immunity might arise from the requirement of basic fairness protected by the Fifth Amendment's Due Process Clause. We rejected the view that fairness considerations, without more, require equal availability of use immunity for prosecution and defense witnesses. However, reluctant to rule out the possibility that some exceptional circumstances might warrant defense witness immunity, we said: "Without precluding the possibility of some circumstances not now anticipated, we simply do not find in the Due Process Clause a general requirement that defense witness immunity must be ordered whenever it seems fair to grant it." 623 F.2d at 777.

■■■ *Turkish* also reckoned with the implications of defense witness immunity upon the division of responsibilities between judges and prosecutors. Mindful of the substantial risks to potential future prosecutions inherent in grants of use immunity, we emphasized that such risks "are matters normally better assessed by prosecutors than by judges." *Id.* at 776. To avoid intruding into the sphere of prosecutors and to spare district courts the burden of holding needless hearings, we explicitly set forth guidance that should have been dispositive of the claim in this case:

> Trial judges should summarily reject claims for defense witness immunity whenever the witness for whom immunity is sought is an actual or potential target of prosecution. No hearing should be held to establish such status. The prosecutor need only show that the witness has been indicted or present to the court *in camera* an *ex parte* affidavit setting forth the circumstances that

support the prosecutor's suspicion of the witness's criminal activity. No duty is imposed upon the prosecutor; he simply has an option to rely upon the witness's status as an actual or potential target of prosecution to foreclose any inquiry concerning immunity for that witness.

*Id.* at 778.[4] The Government here made the necessary showing under *Turkish* to foreclose any further inquiry into the propriety of defense witness immunity.

■■■ Even if the witnesses had not been prosecution targets, Todaro's claim for defense witness immunity should have been summarily rejected for lack of a sufficient showing that the witnesses' testimony is clearly exculpatory, material, and unobtainable from other sources. *Id.* Defense counsel's affidavit accompanying the motion was patently insufficient to satisfy these requirements. There is no indication of what the witnesses could be expected to testify about at trial. Nor does the affidavit state whether evidence of the alleged loans is unavailable from other sources and whether the two witnesses would testify if immunized.

This Circuit has had no occasion since *Turkish* to consider what "exceptional circumstances," if any, might warrant a grant of defense witness immunity. Todaro contends that this case presents such circumstances and invites us to ignore the Government's asserted prosecutorial interest in the witnesses. We reiterate our view that a witness' status as an actual or potential target of prosecution always warrants summary rejection of a claim for defense witness immunity. Beyond this, however, Todaro has not presented circumstances that would require serious consideration of use immunity for even a non-target witness.

---

was granted to a defense witness, *United States v. Horwitz, supra,* 622 F.2d at 1105–06, *remanding United States v. De Palma,* 476 F.Supp. 775 (S.D. N.Y.1979). *See also Grochulski v. Henderson,* 637 F.2d 50, 52–53 (2d Cir.1980) (similar claim raised in federal habeas attack upon state criminal conviction), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1383, 67 L.Ed.2d 358 (1981). *But see United States v. Smith,* 17 M.J. 994 (A.C.M.R.1984).

**4.** As the D.C. Circuit has noted, this passage obviously does not mean that "the government must grant immunity in every case unless the witness is 'an actual or potential target of prosecution.'" *United States v. Heldt,* 668 F.2d 1238, 1283 n. 85 (D.C.Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).

Todaro relies first on what he characterizes as "the selective use of immunity to gain a tactical advantage." Brief for Appellee at 22. Though this Court has intimated that discriminatory use of immunity to gain a tactical advantage might support a due process claim for defense witness immunity, *United States v. Calvente, supra*, 722 F.2d at 1025, there is no suggestion of this sort of gamesmanship in the record. The number of witnesses immunized by the Government, without more, would not support a finding of this type of misconduct. Todaro's argument, based on conclusory and unsupported allegations of prosecutorial misconduct, is no different than the "equalizing" argument already rejected in *Turkish*.

Nor do we find persuasive Todaro's second argument that this case differs from a standard defense witness immunity claim because *Holland v. United States, supra*, 348 U.S. at 135–36, 75 S.Ct. at 135–36, imposes on the prosecution in a "net worth" case the duty to pursue defense leads as to possible sources of non-taxable income and directs the trial judge to consider the leads as true if the Government fails to show a reasonable investigation into their validity. Todaro contends that the investigation requirement of *Holland* includes an obligation to grant use immunity to "lead" witnesses who invoke their self-incrimination privilege. We disagree.

*Holland* obliges the Government to pursue only those leads "reasonably susceptible of being checked." 348 U.S. at 136, 75 S.Ct. at 136. That obligation does not require the Government to displace a lawful claim of privilege. The Supreme Court emphasized that it was not within the province of the courts to dictate governmental investigative procedures. *Id.*

Nor do we agree with amici's related suggestion that the order in this case is sustainable as a remedial sanction for the Government's failure to fulfill its *Holland* obligation. The District Court made no finding of a *Holland* violation, and the record would not support such a finding. Finally, any determination of a *Holland*

violation, should one occur, and of the need for a remedy other than defense witness immunity should await the close of the Government's case at trial, when the fairness of using the "net worth" method may be assessed on a complete record.

The order of the District Court is reversed.